## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

**SHARON LINNIN, Executor of the Estate of WILLIAM R. LINNIN, Deceased,**
**Plaintiff**

**v.**                                        **Civil Action No.:      2:05cv108**

**STEVE MICHIELSENS, Individually,**
**THE HERTZ CORP.,**
**HERTZ EQUIPMENT RENTAL CORP.,**
**JLG INDUSTRIES, INC., and**
**JLG EQUIPMENT SERVICES, INC.,**
**Defendants**

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff Linnin's Motion to Remand, which is based on the fact

that Defendant Michielsens, a Virginia resident, destroys diversity.  Plaintiff's motion is **DENIED.**[1]

I.      **Facts**

This case involves an accident that occurred because a lift tipped over allegedly as the result

of the fact that  it was driven on an incline allegedly exceeding the manufacturer's specifications.

On March 1, 2003, William R. Linnin, Plaintiff's husband, died while operating a JLG 110HX aerial

lift at Busch Gardens, an amusement park in Williamsburg, Virginia.  Mr. Linnin was employed as

a painter for  Hartman-Walsh Painting Company, which had contracted to paint some amusement

rides at Busch Gardens.   To accomplish the job, Hartman-Walsh had a contract to rent aerial lifts

---

[1]In 17th Street Assoc., LLP v. Markel Int'l Ins. Co. Ltd., et al., ____ F. Supp. 2d ____, ____
(E.D. Va.  May ____, 2005), Case No. 2:04cv681, released on the same day as this Opinion and
Order, this Court also denies the plaintiff's Motion to Remand.  Although the facts of the two cases
are different, the cases are similar in that they involve questions of diversity jurisdiction and
fraudulent joinder.  In an effort to avoid repeating itself regarding these issues, in both Opinions, this
Court will refer to the other Opinion on occasion.

from Defendant Hertz.   Apparently, Mr. Linnin was using one of the aerial lifts to clean and paint

the exterior surface of a roller coaster when the lift became unstable, tipped forward, and pitched him

to the ground.   Mr. Linnin died from the injuries he suffered from the fall.

According to Plaintiff, Defendant Michielsens should have foreseen the lift's potential to tip

over and should have warned all of the painting company's employees about this possibility,

including the decedent.   Three days prior to the accident, on February 25, 2003, the painting

company had complained to Defendant Hertz about the lift's lack of power "to climb the hill located

by the Lochness Monster roller coaster ride at Busch Gardens."  Pl.'s Reply Mem. in Supp. of Mot.

to Remand at Ex. A, p. 8.   In response to the complaint, Defendant Hertz sent Defendant

Michielsens, a mechanic, to service the lift's engine.   In an affidavit, Defendant Michielsens stated

that he "received thorough training on how to operate and service all of the equipment [Hertz

rented]."  Id. at Ex. B ¶ 2.  According to a report by the Virginia Department of Labor and Industry,

Defendant Michielsens replaced a fuel filter and "tested all operations."  Id. at Ex. A, p. 8.   He also

"attempted to test the drive controls by traveling up a hill," but the "machine started to slide

backwards down the hill until it went [off] the asphalt into the soft shoulder where it got stuck."  Id.

 The mechanic then contacted the salesman for Hertz, who then, in turn, contacted a branch manager

in order to have the lift towed.  Id.  Defendant Michielsens had nothing more to do with the lift or

with the paint company's employees.   The lift was neither "tagged out of service" nor disabled.  Id.

"When the machine was towed up the hill[,] it was parked in a parking lot until it was utilized 3-days

later on 03/01/03 by an employee of the painting company."  Id.   The report goes on to state that

"[t]he employee of the painting company drove the machine from the parking lot over to the Big Bad

Wolf roller coaster ride where he then utilized it during painting operations and was subsequently

2

fatally injured when the lift tipped over." Id.

When discussing Defendant Michielsens' involvement in the accident, the report indicated that "frequent/periodic inspections [were] not being performed as required by ANSI A92.5 1992" and concluded that the "rental company employees did not perform the required inspections on the last day that maintenance was performed out at the job site prior to the accident." Id. at 10. The report went on to find that the

> . . . mechanic who serviced and operated the machine on 02/25/03 .
> . . had not been trained on the inspection requirements as required by
> ANSI and the manufacturer, and that the machine must be maintained
> to manufacturer's specifications. The branch location itself did not
> recognize that the machine would need a detailed inspection after the
> mishap on 02/25/03.

Id. at 11 (emphasis added). Finally, the report observed that Defendant Michielsens did not recognize the dangers the lift might pose, noting: "The Mechanic attempted to travel the machine up to steep of grade as documented in the finding of the facts . . . .This shows that he did not recognize the machine limitations or the hazards imposed by trying to travel on the steep grade." Id. Ultimately, concluding that Mr. Linnin used the lift on "an incline exceeding the manufacturer's specifications," the report recommended a $3750 penalty to be imposed on Hertz. Id. at 13.


II.     **Procedural Background**

On January 10, 2005, Plaintiff, Mr. Linnin's wife, the Executor of his estate, and a resident of the Commonwealth of Virginia, filed a negligence and product liability action in the Circuit Court of the City of Norfolk against the following Defendants:

1.     Steve Michielsens, the mechanic who serviced on February 25, 2003 the
        aerial lift involved in Mr. Linnin's accident.   Mr. Michielsens was an

3

employee of Hertz Equipment Rental Corporation, a co-defendant, at the time.   He is a citizen of the Commonwealth of Virginia.

2.      The Hertz Corporation, which, among other things, rents equipment that includes aerial lifts.   The Hertz Corporation is a Delaware corporation.

3.      Hertz Equipment Rental Corporation, which rented the aerial lift to Mr. Limon's employer.   Hertz Equipment Rental Corporation is a Delaware corporation.[2]

4.      JLG Industries, Inc., which designs, manufactures, and sells aerial lifts known as model 110HX aerial lifts.   JLG Industries is a Pennsylvania corporation.

5.      JLG Equipment Services, which rents and services industrial equipment such as model 110HX aerial lifts.   JLG Equipment Services is a Pennsylvania corporation.[3]

Out of the five defendants, only Defendant Michielsens is a citizen of the Commonwealth of Virginia.   Consequently, as Defendants seek to remove the action to this Court, his inclusion as a party is highly contested as it destroys diversity.

In the Motion for Judgment, Plaintiff makes the following allegations:

1.      Count One alleges that "defendants Michielsens and Hertz, and each of them, negligently leased, rented, serviced, maintained and inspected" the aeriel lift and that Hertz "knew or should have known by its agent and servant that the lift was being used under circumstances that implicate the need for certain safety devices and features which were not functioning at the time of the incident as required and had not been properly inspected, maintained and/or serviced prior to March 1, 2003, and should have removed the vehicle from service prior to March 1, 2003."   Mot. for J. ¶ 11.

Plaintiff also alleges in Count One that "defendants Michielsens and Hertz, and each of them, were otherwise negligent with respect to the aerial lift and further failed to inform the decedent or his employer of such unreasonably dangerous and unsafe condition . . .   despite actual knowledge of the

---

[2]The Hertz Corporation and Hertz Equipment Rental Corporation will be collectively referred to as "Hertz" for the purposes of this Order.

[3]JLG Industries, Inc. and JLG Equipment Services will be collectively referred to as "JLG" for the purposes of this Order.

conditions of the lift . . . ."  Id. ¶ 12.

2.     Count Two alleges that "defendants Michielsens and Hertz, and each of them, negligently failed to warn, instruct, and apprise the decedent of the dangers and hazards of using the aerial lift . . . ."  Id. ¶ 16.

3.     Count Three alleges that "defendants Michielsens and Hertz, and each of them, expressly and impliedly warranted that the aerial lift . . . was of merchantable quality, fit and safe for its intended and ordinary uses . . . ."  Id. ¶ 19.

4.     Count Four alleges that "defendants JLG, and each of them, negligently designed, manufactured, assembled tested, labeled, marketed, distributed and sold the subject aerial lift in such a manner as to render said lift unreasonably dangerous for its ordinary and/or foreseeable uses."  Id. ¶ 23.   Count Four also alleges that defendants JLG "were otherwise negligent with respect to the aerial lift's warnings and instructions . . . ."  Id. ¶ 24.

5.     Count Five alleges that "defendants JLG, and each of them, expressly and impliedly warranted that the aerial lift . . . was of merchantable quality, fit and safe for its intended and ordinary uses . . . ."  Id. at ¶30.

Plaintiff's Motion for Judgment alleges compensatory damages of $15,000,000.

Defendants Michielsens and Hertz  filed a joint Grounds of Defense on February 1, 2005; Defendants JLG filed its Grounds of Defense on February 7, 2005.   On February 18, 2005, Defendants removed the case pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship, claiming that Defendant Michielsens was either fraudulently joined or, alternatively, was a nominal party whose residence should be disregarded for diversity purposes.

On February 24, 2005, Plaintiff filed a Motion to Remand and a Memorandum of Law in support of its Motion.   Defendants JLG filed their opposition on March 7, 2005, and Plaintiff filed its Reply on March 18, 2005.  A hearing was held on the matter on April 12, 2005.  The matter is ripe for judicial determination.

### III.   Discussion

#### A.   Removal in Diversity Cases

Pursuant to Section 2, Clause 1 of Article III of the United States Constitution, the federal courts are empowered to have jurisdiction over cases involving controversies between citizens of different states or between a citizen of a state and an alien.   The Judiciary Act of 1789 first outlined the extent of the authority.   Congress now provides for diversity jurisdiction in Section § 1332 of Title 28 of the United States Code.   As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he obvious and elementary policy behind diversity jurisdiction is that an out-of-state defendant should be entitled to a federal forum if he decides that he cannot receive a fair trial in a state court due to local prejudice."   Roche, 373 F.3d at 620.

> If diversity jurisdiction exists because of a fear that the state tribunal would be prejudiced towards the out-of-state plaintiff or defendant, that concern is understandably allayed when that party is joined with a citizen from the forum state.   Indeed, when members from the forum state are present on both sides of the controversy, it becomes difficult to imagine that a state tribunal would favor one side based upon biases in favor of its own citizens.

Id.  (quoting Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494 (3d Cir. 1997)). In short, a "tribunal free from local prejudice" is "the purpose of diversity jurisdiction."   Id.

When a case is filed in state court and common citizenship does not exist between opposing parties, diversity jurisdiction permits a defendant to remove a case to federal court.   See 28 U.S.C. § 1441(b).   Removal is strictly construed, however, and the party seeking removal bears the burden of establishing federal jurisdiction.   Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).   Nevertheless, the removal procedure should be "fair to both plaintiffs and defendants alike."   McKinney v. Bd. of Tr. of Mayland Cmty. Coll., 955 F.2d 924, 927 (4th. Cir.

1992).  The very fact that Congress has provided defendants with the right of removal indicates that the removal right "is at least as important as the plaintiff's right to the forum of his choice," and the statutory right to removal should not be "easily overcome by tactical maneuvering by plaintiffs." Id.  See also 17th Street Assoc., LLP v. Markel Int'l Ins. Co. Ltd., et al.,___ F. Supp. 2d ____, ____ (E.D. Va. May ____, 2005), Case No. 2:04cv681 (see supra note 1), hereinafter 17th Street, slip op. at 6-9 (where this Court provides an in depth discussion of the significant federalism concerns surrounding removal jurisdiction).

If a case is remanded, the defendant ordinarily forever loses his right to a federal forum without any possibility of a review of the court's remand decision.  See 28 U.S.C. § 1447(d) ("An order remanding a case the State court from which it was removed is not reviewable on appeal or otherwise . . . .").  Caution, therefore, is required, "lest [the Court] deprive the defendant of the statutory right to a federal forum."  WRIGHT, MILLER, & COOPER,  FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3d § 3739 [hereinafter WRIGHT & MILLER].  See also Semtek Intern., Inc. v. Lockheed Martin Corp., 988 F. Supp. 913, 914 -15 (D. Md. 1997) (noting that "a district court should be cautious in denying defendants access to a federal forum because remand orders are generally unreviewable"); Evans v. Gen. Motors Corp.,  939 F. Supp. 158, 159 (D. Conn. 1996) (noting that  a federal court must be "cautious about remand, lest it erroneously deprive defendant of a right to a federal forum"); Cheshire v. Coca-Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1100 (D. S.C. 1990) (observing that the rule that the plaintiff is "master of the complaint . . .  must be balanced with the fact that courts must be cautious in denying defendants access to a federal forum since under 28 U.S.C. § 1447(d), remand orders are generally not reviewable").  Moreover, any argument that remand does not deprive a defendant of "some valuable right which is given to

7

him" because state courts operate, like federal courts, "with an eye to justice" begs the question, as the issue of whether state courts are capable of dispensing justice – which they surely are – distracts from the very real fact that defendants, in certain situations, have a <u>statutory right</u> to a federal forum. WRIGHT & MILLER § 3739 (quoting <u>Pabst v. Roxanna Petroleum Co.</u>, 30 F.2d 953, 954 (D.C. Tex. 1929)). As the United States Supreme Court has stated, "the Federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts of the protection of their rights in those tribunals." <u>Alabama Great S. Ry. Co. v. Thompson</u>, 200 U.S. 206, 218 (1906). Therefore, because this Court takes very seriously a defendant's statutory right to a federal forum, and because it is concerned that remand orders are generally unreviewable, it does not believe that remand should be applied mechanically; rather, it maintains that courts are obligated to ensure that removal procedure is fair to "both plaintiffs and defendants alike." <u>McKinney</u>, 955 F.2d at 927.

### 1.    Fraudulent Joinder

The "fraudulent joinder" doctrine is one way courts ensure that removal procedure is fairly applied. Where a non-diverse defendant is named in the initial state court complaint as part of a tactical effort to defeat diversity jurisdiction, the fraudulent joinder doctrine permits district courts to assume jurisdiction over a case even if there are named defendants who lack diversity at the time the case is removed. <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999). To establish fraudulent joinder, the defendant must demonstrate either that "there is no possibility" that the plaintiff would be able to establish a cause of action against the nondiverse defendant in state court or that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." <u>Hartley v. CSX Trans., Inc.</u>, 187 F.3d 422, 424 (4th Cir. 1999) (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F. 3d 229, 232

(4th Cir. 1993)).  The defendant's burden is therefore a heavy one, as the standard that applies to fraudulent joinder "is even more favorable to the plaintiff than the standard of review for ruling on a motion to dismiss . . . . "  Id.

While the "no possibility" standard seems straightforward, it is not, as there is an inherent tension in the standard between whether courts should simply determine whether "no cause of action is stated" or whether the plaintiff has "no real intention to get a joint judgment."  AIDS Counseling, 903 F.2d at 1003 (citation omitted).  This tension between what is "stated" and what is "intend[ed]" is evidenced in AIDS Counseling:

> . . . fraudulent joinder is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the defendant, or in fact no cause of action exists.  In other words, a joinder is fraudulent if there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming.

Id. (citation omitted) (emphasis added).  As one district court has recently observed, "AIDS Counseling's description of fraudulent joinder appears to contradict itself," as the "'real intention' formulation . . . is significantly at odds with the less subjective 'no cause of action' language . . . ." Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 947 (D. Md. 2004).  This Court also perceives this contradiction.  Ascertaining whether a party states a cause of action is much different from ascertaining whether a party intends to get a joint judgment.

Another tension exists as well.  The "no cause of action" formulation essentially asks whether, at the beginning of the litigation, the plaintiff can sue the defendant at all.  The "intention to get a joint judgment" language, on the other hand, asks whether the plaintiff, at the end of the litigation, has a real intention to recover jointly.  In other words, in addition to the objective-

subjective problem, the focus shifts between the plaintiff's ability to sue and the plaintiff's intention of getting a joint judgment – two very different questions.   Given these tensions, this Court agrees with the district court in Riverdale Baptist that the "no possibility" standard "is more properly applied not rigidly" but reasonably.   Id. at 948.   In fact, in this Court's view, the inherent contradiction in the standard is also why some courts have noted that the "'no possibility' language cannot be taken literally"; rather, "what is meant is that there is 'no reasonable basis' for predicting liability on the claims alleged."   Cordill v. Purdue Pharma, L.P., 2002 WL 31474466 *2 n. 5 (W.D. Va. Nov. 5, 2002) (quoting In re Resulin Products Liability Litigation, 133 F. Supp. 2d 272, 280 n. 4 (S.D.N.Y. 2001)); see also Beaudoin v. Sites, 886 F. Supp. 1300, 1302 (E.D. Va. 1995) (applying the "no possibility" standard for fraudulent joinder as a "reasonable possibility that a state court would rule against any of the [defendants]").

To complicate matters further, when fraudulent joinder is alleged, the "no possibility" standard to be applied by the court is more akin to a motion to dismiss, see supra, while the scope of the court's review is more akin to a motion for summary judgment.   Beaudoin, 886 F. Supp. at 1302 (citation omitted).   When analyzing fraudulent joinder, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available."   AIDS Counseling, 903 F.2d at 1004.   Indeed, federal courts have the "authority to look beyond the pleadings and consider summary-judgment-type evidence, such as the affidavits and the depositions accompanying either a notice of removal or a motion to remand, particularly when doing so may provide the only way in which the federal courts can protect a litigant's right to a federal forum based on diversity jurisdiction."   Wright & Miller § 3641.   In this way, although the standard of review courts are to apply to fraudulent joinder is similar to a

10

motion to dismiss, "the procedure appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P., Rule 56(b)." Beaudoin, 886 F. Supp. at 1302.

Thus the court's procedure for ascertaining fraudulent joinder appears to be more wide-ranging than the standard of review it is to apply once it has ascertained it. This fact only bolsters this Court's view, returning to the discussion above, that the "no possibility" standard cannot possibly be taken literally or applied mechanically. Otherwise, there is no reason for courts to have the authority to look beyond the pleadings and consider "summary-judgment-type evidence," because such authority is not needed if the "no possibility" standard encompasses any conceivable possibility of recovery and is mechanically and rigidly applied. Rather, such authority comports better with a standard of review that asks whether there is a "'reasonable basis' for predicting liability" based on the claims alleged. Cordill, 2002 WL at *2 n. 5. Properly formulated, the test for fraudulent joinder, therefore, is "whether the defendant has demonstrated there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood v. Ill. Cen. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004).

## 2. Analysis

In this case, with respect to Plaintiff's negligence claims, Defendants maintain that there is "no possibility" for Plaintiff to prevail against nondiverse Defendant Michielsens because, under Virginia law, "an employee acting within the scope of his employment cannot be held liable for injuries to third-persons that occur as a result of an omission, a failure to notify, or negligence in the performance of his duties to his employer." Def. Br. in Opp. to Pl.'s Mot. to Remand at 3.

11

According to Defendants, because Plaintiff has "asserted acts of negligence against Michielsens that alleged a failure to maintain and a failure to warn," these "alleged acts of negligence can only be categorized as acts of omission, nonperformance, or involve duties flowing only from Michielsens to Hertz." Id. In Defendants' view, if these acts are proven true, "the party solely responsible for these alleged acts is Hertz," and thus there is "no possibility" for Plaintiff to prevail against Defendant Michielsens. Id. at 5.

Additionally, with respect to Plaintiff's breach of warranty claim against Defendant Michielsens, Defendants also contend that Plaintiff has "no possibility" of recovery. According to Defendants, in Virginia, when an agent contracts for a disclosed principal and the benefits of the contract are accepted by the principal, there is no personal liability on the agent. For this reason, because "Hertz is a disclosed principal[,] . . . any warranty, express or implied, is between Hertz and its customer and its customer's authorized users, and no liability for breach of warranty can be laid upon Hertz's employee, Michielsens."

Plaintiff, in contrast, supports its Motion to Remand by maintaining that it has alleged a possible claim against Defendant Michielsens "for his negligence and failure to warn of dangers present in the defective JLG lift." Pl.'s Mem. in Supp. of Mot. to Remand at 13. In Plaintiff's view, "Virginia law . . . recognizes that [D]efendant Michielsens had a duty to perform the maintenance and inspection on February 25, 2003 in a non-negligent fashion and to warn of the dangers which he knew or should have known by his actions that day." Id. at 14. Plaintiff thus maintains that, because "the finding of respondeat superior liability is necessarily premised upon a finding that the employee was also negligent," both Hertz, the employer, and Michielsens, the employee, are jointly and severally liable to Plaintiff if Defendant Michielsens is found negligent. Id. at 16.

After a hearing on Plaintiff's motion, it is clear to the Court that the question of whether

Defendant Michielsens has been fraudulently joined turns on whether, under Virginia law, Defendant Michielsens, a mechanic employed by Hertz, would be held liable for negligently failing to take the lift out of service or for failing to warn Mr. Linnin about the dangerousness of the lift. The Court finds that there is no possibility of a successful claim against Defendant Michielsens and that Plaintiff has ""no real intention of get[ting] a joint judgment" against Defendants Hertz and Michielsens.

### a.    No Possibility of a Successful Claim

The case before the Court here is for the possible failure of the employer to send an individual who would thoroughly inspect the ability of a machine to do the job required of it, namely, to travel up a steep grade without tipping over.   It is not a case concerning whether the engine had sufficient power or whether the mechanic serviced the engine correctly.   In other words, this case is about a possible failure to inspect and warn on the <u>employer's</u> part about a machine's potential limitations, but it is not a case involving the faulty repair of a faulty engine on the <u>employee's</u> part because Defendant Michielsens was a mechanic who simply performed his job as he had been trained to do it.   As discussed in more detail below, there is no possibility of a successful claim against Defendant Michielsens because the Court concludes the Defendant Michielsens could not have foreseen the accident that was to occur and thus did not have a duty to warn the decedent, Mr. Linnin, about the lift.   There is no showing of any connection between Michielsens and Linnin. Although foreseeabilty is generally a question for the jury, "when reasonable minds could not differ [as to] issues of negligence and proximate cause," foreseeability becomes a question of law to be decided by the court. <u>See</u> <u>Kimberlin v. PM Transport, Inc.</u>, 264 Va. 261, 266 (2002).

The Court first observes that there are no facts in the record demonstrating that Defendant Michielsens should have foreseen that the lift's potential instablity might injure Mr. Linnin. "One

is not charged with foreseeing that which could not be expected to happen." <u>Norfolk Shipbuilding</u>

<u>& Drydock Co., Inc. v. Scovel</u>, 240 Va. 472, 475 (1990) (citation omitted).   "[A] wrongdoer is not

responsible for a consequence which is merely possible, according to occasional experience, but only

for a consequence which is probable according to ordinary and usual experience." <u>Id.</u> (internal

quotations omitted).

> If men were held answerable for everything they did which was
> dangerous in fact, they would be held for all their acts from which
> harm in fact ensued.   Accordingly, in order to impute knowledge of
> a dangerous thing or place, the danger therefrom must have been such
> as is recognized by common experience or by the special experience
> of the actor, or such as might reasonably have been expected by a
> person of ordinary prudence and of ordinary foresight.

<u>Id.</u> (internal quotations omitted).   In this case, Defendant Michielsens was sent to service a lift

because a customer complained about its lack of power.   When he test-drove the lift, he drove it on

a steep grade.   It then slid and got stuck.   It did not tip over.   After the lift got stuck, Defendant

Michielsens contacted his branch manager, who subsequently had the lift towed.   Under the facts

of this case, there is no question that Defendant Michielsens acted "as might reasonably have been

expected by a person of ordinary prudence and of ordinary foresight." <u>Id.</u>

In fact, this case is very similar to two cases in the Eastern District of Virginia where both

Judge Payne and Judge Hoffman concluded that an employee had been fraudulently joined to defeat

diversity in a personal injury case.   In <u>Beaudoin</u>, the plaintiff maintained that the store manager

acted negligently when grocery store employees placed plants in such a way that vines could fall on

the floor into the path of customers, causing customers to slip on the vines and fall.   886 F. Supp.

at 1304.   Judge Payne disagreed, stating:

> Under Virginia law, an employee of the owner or operator of the
> premises in an action based on standard premises liability theories
> may be held liable only for affirmative acts of negligence, not merely
> because, in the status of employee of the owner or operator, he or she

14

is guilty of an omission.

Id. at 1303 (citing Miller v. Quarles, 242 Va. 343, 410 (1991); Turner v. Carneal, 156 Va. 889

(1931)); see also Pusey v. Riner, 1992 WL 884506, *3 (Va. Cir. Ct. Feb. 18, 1992) (concluding that

a defendant-agent must take "positive" action in order to be held negligent).   Judge Payne then

concluded that there was "no reasonable possibility" that the store manager would be held liable in

state court and thus had been fraudulently joined because he was not the owner or operator of the

store; he was not on duty when the plaintiff was injured; there were "no facts in the record to

demonstrate that the [store manager] had actual or constructive notice of any defects upon the store

premises"; there were no allegations that he negligently hired or trained the employees; and he "was

not involved in the actual maintenance of the store on or about the time [the plaintiff] fell."  Id.

Similarly, in Edmond v. Food Lion, 895 F. Supp. 103 (E.D. Va. 1994), Judge Hoffman also

concluded that a store manager had been fraudulently joined to defeat diversity.  In Edmond, the

plaintiff alleged that the store manager was negligent because he failed to properly operate, control,

and maintain the grocery store where she was injured.  Judge Hoffman concluded there "was no legal

possibility" that plaintiff could maintain a successful claim against the store manager because he was

not the owner but "merely the store manger, and he was not even on duty at the date and time [the

plaintiff] fell."  Id. at 105.   He also noted there were "no facts in the record to demonstrate that [the

store manager] had actual or constructive notice of any defects upon the store premises."  Id.  The

store manager thus was fraudulently joined because he could not be liable under Virginia law.

Id. (citing Roll 'R' Way Rinks, Inc. v. Smith, 218 Va. 321, 327 (1977)).

In this case, the facts do not suggest and there is no evidence in the record that Defendant

Michielsens had actual or constructive notice that the lift was dangerous or that he had "special

knowledge" that should have alerted him to the fact that the lift might tip over and injure the occupant.  Moreover, there was nothing to show that he contacted Mr. Linnin. The Virginia Department of Labor and Industry report concluded that Defendant Michielsens "had not been trained on the inspection requirements as required by ANSI and the manufacturer."  Report at 11. The report also observed that Defendant Michielsens "did not recognize the machine limitations or the hazards imposed by trying to travel on the steep grade."  Id.   In fact, the report determined that "branch location itself did not recognize that the machine would need a detailed inspection after the mishap" when Defendant Michielsens reported the problem with the lift.  Id.   Indeed, reporting the lift's lodged position to his employer was the appropriate action.   If Defendant Michielsens did not foresee the dangers the lift posed to himself; if he was not trained to inspect lifts; if the lift did not tip over when he drove it; and if his branch manager was also unaware of the possible danger the lift posed when Defendant Michielsens reported it to him, the Court is unwilling to find that Defendant Michielsens should have foreseen that the lift might be dangerous to others, as this was not within his duties or his expertise.

Finally,  unlike Southern States Grain Marketing Co-op., Inc. v. Garber,  205 Va. 757, 761 (1965), cited by Plaintiff for the proposition that Defendant Michielsens did not exercise reasonable care, Defendant Michielsens did not directly and affirmatively instruct Mr. Linnin to use a lift he knew was dangerous.  See id. at 761.  In Southern States Grain Marketing, the  injured party, Garber, held a hoisting cable on "the command" of an employee of the defendant.  Id. at 760.  While Garber held the cable, the employee then started up the hoisting machinery without giving Garber notice that the machinery was about to be activated.   Id.   Garber was subsequently injured and sued.   The Virginia Supreme Court disagreed with the defendant's contention that Garber was contributorily

negligent, noting that the defendant's employee told Garber to hold the cable and concluding that his "active negligence [of] failing to give notice to the plaintiff . . . transformed a safe situation into one of danger." Id. at 762.   In this way, as one Virginia circuit court put it, Southern States Grain Marketing involved an employee who "negligently undertook positive action" and "affirmatively provided a dangerous product which it should reasonably have foreseen would create danger to those with whom it came in contact." Pusey, 1992 WL at *3 (emphasis added).

This case is much different.   Defendant Michielsens did not instruct or command Mr. Linnin to do anything.   He did not affirmatively activate machinery that he knew to be dangerous without warning Mr. Linnin about it.   He did not "transform a safe situation into one of danger" and then fail to give notice to Mr. Linnin about that transformation.   He did not "affirmatively provide[ ] a dangerous product."   Moreover, with respect to what Defendant Michielsens arguably may have failed to do, as Judge Payne held in Beaudoin, and as the Virginia Circuit Court held in Pusey, any "omission" he might have conceivably committed would be "a duty owing to his employer, rather than a positive act towards the plaintiff." Id. at *4 (citing Schoonover's Adm'r v. Russell, 8 Va. Cir. 320 (1987)).   Accordingly, there is "no possibility" that Defendant Michielsens would be held liable under Virginia law.   He is not a proper party to this lawsuit and the Court **FINDS** that he has been joined solely for the purpose of avoiding federal jurisdiction and therefore is fraudulently joined.

In addition to its negligence claims, Plaintiff also asserts a breach of warranty claim against Defendant Michielsens.   "Under Virginia law, . . . manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability." Bly v. Otis Elevator Co., 713 F.2d 1040, 1042-43 (4th Cir. 1983) (emphasis added); see also Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 962 (1979) (holding that a manufacturer

of a chattel is subject to liability for knowing or having reason to know that a chattel is dangerous and failing to warn of its dangerousness).  Defendant Michielsens is neither a manufacturer nor a seller; he is a mechanic employed by Hertz.   Defendant Michielsens made no contract – oral, written, or implied – with the decedent, Mr. Linnin.   In this case, any warranty, express or implied, would only be between Hertz, the "seller," and its customer's authorized users.   The Court therefore concludes that there is no reasonable basis for predicting any possibility of liability against Defendant Michielsens on Plaintiff's breach of warranty claim.   Accordingly, for the above reasons, the Court **DENIES** Plaintiff's Motion to Remand and **ORDERS** that Defendant Michielsens be **DISMISSED** from this lawsuit.

### b.        No Intention of Getting a Joint Judgment

In addition to concluding that Plaintiff has no possibility of succeeding in its claims against Defendant Michielsens, the Court also concludes that, if Defendant Michielsens arguably could be found liable, Plaintiff has no intention of getting a joint judgment against Defendant Michielsens and Defendant Hertz.  Assuming, for the sake of argument, that Defendant Michielsens could be found negligent in this case, it will be Hertz, the deep-pocket employer, who will ultimately be responsible for any damages under the doctrine of respondeat superior.[4]   Normally, the plaintiff has a lot to lose

---

[4]In Virginia, the doctrine of respondeat superior is firmly established:  "an employer is liable for the tortious acts of its employee if that employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed." Giant of Maryland, Inc. v. Enger, 257 Va. 513, 516 (1999).   Under the doctrine, an injured party must establish that a master-servant relationship existed at the time and with respect to the specific action out of which the injury arose in order to hold an employer liable. Smith v. Landmark Communications, Inc., 246 Va. 149, 151 (1993).   In this case, the parties agree that Defendant Michielsens was an employee of Defendant Hertz.   Plaintiff does not allege that Defendant Michielsens acted outside of the scope of his employment.

The doctrine of respondeat superior ordinarily does not shield a negligent employee from the employee's own liability.   See Roughton Pontiac Corp. v. Alston, 236 Va. 152, 156 (1988) (holding that, where master and servant are sued together in tort, the master's liability is solely dependent on the servant's conduct).  "In Virginia, employers and employees are deemed to be jointly liable and jointly suable for the employee's wrongful act."  Thurston Metals & Supply Co., Inc. v. Taylor, 230

and not much to gain from joining a lowly employee who is not a foreman, boss, or overseer.  Juries

are loath to saddle a lowly employee with a joint and several judgment.  Any experienced trial lawyer

such as the plaintiff's attorney who actually desires a judgment against a target defendant would

never seek a joint judgment against a target defendant and a lowly employee for fear that the

judgment amount would be reduced or negated out of sympathy for the employee.   "[G]iven the

relative financial positions of most companies versus their employees, the only time an employee

is going to be sued is when it serves a tactical legal purpose, like defeating diversity."  Ayoub v.

Baggett, 820 F. Supp. 298, 300 (S.D. Tex. 1993); see also 17th Street slip op. at 23.    In this case,

Plaintiff has nothing to gain from joining Defendant Michielsens except for defeating diversity.  See

Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, 2003 WL 21783304 *3 (E.D. La. July

30, 2003) (concluding, in a case where plaintiff sought leave to amend, that fraudulent joinder

existed because an employee, whose negligence would be imputed to his employer under the

doctrine of respondeat superior, was not necessary to the litigation because the plaintiff had nothing

to gain by joining him).

It is therefore "procedural gamesmanship," as opposed to the purpose of removal jurisdiction

---

Va. 475, 483-84 (1986); see also Pavelka v. Carter, 996 F.2d 645, 651 (4th Cir. 1993) (stating that, under the doctrine of respondeat superior, "liability is joint and several; the servant is not relieved."). Ultimately, however, under the doctrine of respondeat superior, an employer is vicariously liable for an employee's tortious acts committed within the scope of employment.  J. v. Victory Tabernacle Baptist Church, 236 Va. 206, 211 (1988).   Accordingly, the employee's negligence is imputed to the employer, who becomes responsible for it.

Obviously, the doctrine of respondeat superior is a public policy doctrine of convenience designed to allocate the risk of liability from employee to employer.  W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 69 (5th ed. 1984) [hereinafter "Prosser and Keeton"].  The doctrine "is based on the proposition that he who expects to derive advantage from an act which is done by another for him must answer for an injury sustained by a third person from that act."  Smith v. Grenadier, 203 Va. 740, 746 (1962).  Professors Prosser and Keeton explain the economic considerations underlying the doctrine concisely:  "In hard fact, the reason for the employers' liability is the damages are taken from a deep pocket."  PROSSER & KEETON at § 69.  This is why, "given the relative financial positions of most companies versus their employees, the only time an employee is going to be sued is when it serves a tactical legal purpose, like defeating diversity."  Ayoub v. Baggett, 820 F. Supp. 298, 300 (S.D. Tex. 1993).

generally and diversity jurisdiction in particular, that ultimately prevents a defendant from defending, for all intents and purposes, a diverse claim in federal court.  Scott R. Haiber, *Removing the Bias Against Removal*, 53 CATH. U. L. REV. 609, 610 (2004).  As numerous courts have acknowledged, and both plaintiffs and defendants recognize, many plaintiffs' attorneys include in  diversity cases a non-diverse defendant only to non-suit that very defendant after one year has passed in order to avoid the federal forum.  See, e.g. Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1326 (N.D. Okla. 2003) (explaining that the ability of plaintiffs to circumvent removal jurisdiction by removing parties after the one-year limit "invite[s] tactical chicanery"); Price v. Food Lion, Inc., 768 F. Supp. 181, 182 (E.D. Va. 1991) (observing that the federal rules may be manipulated to prevent removal of a diversity case to federal court by nonsuiting the only nondiverse defendant more than one year after the complaint is filed); McLaughlin v. Miners & Merchants Bank & Trust Co., 758 F. Supp. 375, 382 (W.D. Va. 1991) (noting plaintiff's "tactic" of taking a nonsuit); Sherman v. Hercules, Inc., 636 F. Supp. 305, 306 (W.D.Va. 1986) (observing the potential to abuse nonsuits in order to forum shop); see also Allyson Singer Breeden, *Federal Removal Jurisdiction and Its Effect on Plaintiff Win-Rates*, 46 RES GESTAE 26, 31 (2002) (observing that a "a carefully timed dismissal that occurs outside of the one-year time limit for removing diversity cases might thwart the defendant's attempt to remove").  This practice greatly disturbs this Court.   If the United States Court of Appeals for the Fourth Circuit is correct in saying that the "concern" that out-of-state defendants may be prejudiced in state courts is "allayed . . . when members from the forum state are present on both sides of the controversy," see Roche, 373 F.3d at 620, what happens when the non-diverse citizen is subsequently non-suited as soon as the one-year deadline prohibiting removal runs?  The result is that diversity jurisdiction – a concept important enough to be included in Article III of the United

States Constitution and given to courts by Congress – has become nothing more than a game: defendants are deprived of the opportunity to exercise their right to removal and litigate in federal court not by a genuine lack of diversity in the case but by means of clever pleading.   No one can pretend otherwise.

Clever pleading, of course, is neither unethical nor illegal – it is, in fact,  good lawyering. But good lawyering should not defeat good judging, which requires a court to call things as it sees them.  In this case, as discussed supra, the Court has concluded that there is no possibility that the Plaintiff would succeed in its negligence claim against Defendant Michielsens; however, even if there was a possibility that Defendant Michielsens could be found negligent, Plaintiff has "no real intention of get[ting] a joint judgment" as to Defendant Michielsens and the other Defendants for the reasons discussed above.  AIDS Counseling, 903 F.2d at 1003.   Therefore, the Court also determines that Defendant Michielsens has been fraudulently joined for this reason as well.  See Cordill, 2002 WL 31474466 at *2 n. 5; see also Zogbi v. Federated Dept. Store, 767 F. Supp. 1037, 1041 (C.D. Cal. 1991) (concluding that, where plaintiff has alleged that the individual defendants were acting in the course and scope of their employment with the defendant employer, the joinder of the individual employees did not defeat diversity); Picquet v. Amoco Production Co., 513 F. Supp. 938, 940 (D.C. La. 1981) (finding fraudulent joinder because the "nondiverse defendant was acting as an agent for a diverse defendant, who was a disclosed principal, and not for himself").

Accordingly, for the above reasons, the Court **DENIES** Plaintiff's Motion to Remand and **ORDERS** that Defendant Michielsens be **DISMISSED** from this lawsuit.

### B.      Indispensable Parties

In addition, Defendants maintain that, pursuant to Fed. R. Civ. P. 19,  Defendant Michielsens

21

is a nominal party who should be dropped from the lawsuit because Hertz is the party responsible

for any loss resulting from its employee's negligence.   Under Federal Rule of Civil Procedure 19,

parties having an interest in a proceeding shall be joined unless joinder will deprive the court of

subject matter jurisdiction.   Fed. R. Civ. P. 19.[5]   "[N]on-diverse parties whose presence is not

essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and the

defendants."  Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 691 (4th Cir. 1978); see also

Weaver v. Marcus, 164 F.2d 862, 864 (4th Cir. 1948).  A court's authority to permit dismissal of a

party under Rule 19 is derived from Rule 21, "Misjoinder and Non-joinder of Parties."   See

Caperton, 585 F.2d at 692 n. 23.  Federal Rule of Civil Procedure 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties
> may be dropped or added by order of the court on motion of any party
> or of its own initiative at any stage of the action and on such terms as
> are just. Any claim against a party may be severed and proceeded
> with separately.

Accordingly, a court may maintain diversity jurisdiction under Rule 21 as long as the parties are not

indispensable under Rule 19.

When considering whether a party is indispensable or not, "[i]t is generally held that a

non-diverse defendant who is a jointly and severally liable tort-feasor is not an indispensable party

---

[5] Federal Rule of Civil Procedure 19 provides, in relevant part:

> (a)  Persons to be Joined if Feasible.  A person who is subject to
> service of process and whose joinder will not deprive the court of
> jurisdiction over the subject matter of the action shall be joined as a
> party in the action if (1) in the person's absence complete relief
> cannot be accorded among those already parties, or (2) the person
> claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's absence may
> (i) as a practical matter impair or impede the person's ability to
> protect that interest or (ii) leave any of the persons already parties
> subject to a substantial risk of incurring double, multiple, or
> otherwise inconsistent obligations by reason of the claimed interest.
> . . . .

to a diversity action under Rule 19 and may be dismissed by the court in order for it to retain jurisdiction." South Carolina Elec. & Gas Co. v. Ranger Const. Co., Inc., 539 F. Supp. 578, 580-81 (D.C.S.C. 1982). "[S]ettled authorities [have held] that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." Janeau v. Pitman Mfg. Co., Inc., 1991 WL 538679, *6  (W.D.N.C. Oct. 25, 1991); see also Cunard Line Ltd. v. Abney,  540 F. Supp. 657 (S.D. N.Y. 1982) (stating as a "maxim" that "jointly and severally liable non-diverse individual defendants may be dropped to salvage jurisdiction over the diverse ones"); Willis v. Semmes, Bowen & Semmes, 441 F. Supp. 1235, 1245 (D.C. Va. 1977) (stating "joint tort-feasors and contractual co-obligors are not indispensable parties"); but see Eddy v. Ellis, 2001 WL 83273 (D. Md. Jan. 24, 2001) (stating that a joint and several party is a real party in interest for the purposes of diversity jurisdiction).  This rule, of course, is a sensible one, as it recognizes that a party could not be considered indispensable if it is not necessary for the plaintiff to sue that party in order to recover.   Joint and several liability benefits plaintiffs by providing them with the flexibility to sue joint tort-feasors jointly or singly, but this very flexibility, however, is premised on the fact that the plaintiff is not required to join all of the tort-feasors in his action.   As one court explained:

> . . . where one is acting as an agent for another, within the scope of his agency, and he commits a tort, both the principal and the agent are joint tort-feasors; and the injured party is not obliged to join both tort-feasors in his action, but he may sue either singly.

South Carolina Elec. & Gas Co., 539 F. Supp. at 581 (emphasis added).  Therefore, because a defendant that does not have to be sued for a plaintiff to recover is not an indispensable party, the Court also **FINDS** that Defendant Michielsens is a nominal party.   As such, he is **DISMISSED** as a party-defendant from this lawsuit for this reason as well.

**IV.    Conclusion**

Under the facts of this case, there appears to be no case against Defendant Michielsens.    If Defendant Michielsens did not foresee the dangers the lift posed to himself; if he was not trained to inspect lifts; if the lift did not tip over when he drove it; and if his branch manager was also unaware of the possible danger the lift posed when Defendant Michielsens reported it to him, the Court cannot find any reason that Defendant Michielsens should have foreseen that the lift might be dangerous to others.    There is a possible case, however, against Hertz in this instance for failing to send a properly trained employee to inspect lifts, for failing to recognize the hazards of traveling on a steep grade, or for failing to take precautions after Defenadant Michielsens reported the lift to them. Indeed, the lift's manufacturer and Hertz may be responsible.    There is, however, no case against Defendant Michielsens, a mechanic who simply serviced the lift as he was instructed to do so and then contacted his employer when the lift slipped and became stuck.    He  is not a proper party to this lawsuit.

If an out-of-state defendant decides "he cannot receive a fair trial in a state court due to local prejudice," he is "entitled to a federal forum."  Roche, 373 F.3d at 620.  This Court takes this entitlement very seriously.    Based on the opinions of Judges Payne and Hoffman discussed supra, other courts in this district also have taken this entitlement very seriously.    Therefore, as there is no reasonable basis for predicting any possibility of liability against Defendant Michielsens, the Court concludes Defendant Michielsens has been fraudulently joined.    Plaintiff also clearly has "no real intention of get[ting] a joint judgment" as to Defendant Michielsens and the other Defendants.  AIDS Counseling, 903 F.2d at 1003.    Finally, the Court  concludes that Defendant Michielsens is a nominal party, as it is not necessary for the Plaintiff to join him in this action to recover. Accordingly, Plaintiff's Motion to Remand is **DENIED** and Defendant Michielsens is **DISMISSED**

from the case.

The Clerk of the Court is **DIRECTED** to forward a copy of this Memorandum Opinion and

Order to counsel of record in the above-captioned matter.

**IT IS SO ORDERED.**

_____/s/_____
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

June      , 2005